UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NGOC SCOTT,

         Plaintiff,

    v.

NEW STAR TRANSPORT, INC. and
PREMJEET GREWAL SINGH, and
DOES 1 through 50, inclusive,

         Defendants.
_____/

NO. CIV. S-10-2812 LKK/KJN

O R D E R

This diversity action arises from a traffic accident involving Plaintiff Ngoc Scott and Defendant Premjeet Grewal Singh. Plaintiff brings a negligence claim against all Defendants.

Pending before the court are Defendants' motions for: (1) summary judgment, Defs' Mot., ECF No. 38; and (2) discovery sanctions, Defs' Mot., ECF No. 68. For the reasons provided herein, the court denies both of Defendants' motions.

**I. BACKGROUND**

**A. Plaintiff's Allegations**

Plaintiff's complaint is primarily based on the following

1

factual allegations:

> On or about October 24, 2008, [P]laintiff Ngoc Scott was driving a vehicle eastbound on Interstate-80, near the off-ramp for Blue Canyon Road, in the number one lane. Defendant Premjeet Grewal Singh was driving a vehicle eastbound on Interstate-80, in number three lane. It is alleged that the drive shaft of [D]efendant Premjeet Grewal Singh's vehicle became detached from the vehicle, striking another vehicle in the number two lane. After the drive shaft struck the vehicle in the number two lane, the vehicle driven by Plaintiff Ngoc Scott was also struck by the drive shaft.

Pl's First Am. Compl., ECF No. 19, at 2-3. Plaintiff's cause of action is based solely on a negligence theory. See id. at 3-4.

**B. Undisputed Facts**[1]

The subject accident occurred on October 24, 2008. Prior to the accident, Defendant Premjeet Grewal Singh ("Grewal" or "Singh") had been driving his truck eastbound on California Interstate 80, near the off-ramp for Blue Canyon in Placer County, California. Grewal was driving at approximately fifty miles per hour.

After Grewal pulled his truck over to the side of the road and parked it,[2] he noticed that the interaxle drive shaft had fallen off his truck.

The interaxle drive shaft is the part of the truck that transfers power from the engine to the axles. The drive axle is

---

[1] The following facts are undisputed, unless otherwise noted. See Pl's Resp., ECF No. 77.

[2] Defendants assert that Grewal pulled over to the side of the road and parked it because Grewal "[s]uddenly and without warning, [had] noticed that the revolutions per minute jumped on the track." Plaintiff asserts that Grewal "would have had warning." See Pl's Resp., ECF No. 77, at 7, ¶ 30.

attached to the wheels and allows the wheels to move.

Grewal was not able to find the interaxle drive shaft on the ground. After checking his truck, he noticed that two cars had parked in front of his truck. Grewal did not speak to any individuals in either of the two cars.

Grewal called a mechanic to examine his truck before leaving the side of the road. The mechanic replaced the yoke (the part of the drive axle that connects to the interaxle drive shaft by straps and cups) and the interaxle drive shaft at the scene.

On August 5, 2008, the truck had been inspected. The vehicle report for the August 5, 2008 inspection states that the mechanic had inspected the interaxle drive shaft u-joints and slip yokes, and that the mechanic had lubricated the interaxle drive shaft u-joints.

On September 16, 2008, the truck had received either an "inspection" or "repair work."[3]

A few years before the accident, a mechanic had replaced the yoke on the truck.[4]

Grewal is a licensed truck driver in Canada, where he resides. Grewal obtained his AZ license in Canada in 1997, which permits him to drive a truck with a tractor and a trailer.

---

[3] Defendants assert that the truck received an "inspection"; Plaintiff contends that the "[e]vidence suggests repair work, not inspection." Pl's Resp., ECF No. 77, at 10, ¶ 51.

[4] Defendants assert that the mechanic's replacement of the yoke was "part of regular maintenance," whereas Plaintiff argues that "[y]oke and interaxle are only replaced when they are not working." Pl's Resp., ECF No. 77, at 12, at ¶ 57.

1  Grewal's license remained current and active at all times
2 prior to and including October 24, 2008, except for a short period
3 of approximately one month or less (prior to October 24, 2008) when
4 his license had expired. Grewal has worked as a truck driver since
5 he obtained his license.
6  Grewal owned the truck and trailer that he was driving on
7 October 24, 2008. The truck that Grewal was driving at the time
8 of the accident was a Volvo tractor, model year 2000, which Grewal
9 purchased used in 2006. The trailer that was attached to the Volvo
10 was a Great Dane trailer, which Grewal purchased in 2007.

**C. Defendants' Motion for Summary Judgment**

On August 10, 2012, Defendants filed the motion for summary judgment presently before court. Defs' Mot., ECF No. 38. Defendants argue, <u>inter alia</u>, that: (1) because Plaintiff's claim is based "solely . . . [on] the fact that an accident took place," Plaintiff is "attempting to hold Defendants strictly liable for an accident," and "Plaintiff should be precluded from applying a strict liability standard to hold Defendants liable in negligence"; (2) "Plaintiff has no evidence that Defendants failed to exercise reasonable care"; and (3) Plaintiff "has no evidence establishing that the Defendants were negligent in entrusting, managing, maintaining, driving, or operating the tractor." Defs' Mem., ECF No. 39, at 7-9.

**D. Defendants' Motion for Discovery Sanctions**

On August 31, 2012, Defendants filed the motion for discovery sanctions presently before the court. Defs' Mot., ECF No. 68.

4

1  Defendants assert that, on August 13, 2012, Plaintiff cancelled a
2  deposition scheduled for August 15, 2012 in Toronto, Canada, but
3  Plaintiff refused to reimburse Defendants for the cost of their
4  airfare due to the last minute cancellation.  Defendants request
5  that the court impose sanctions on Plaintiff for the cost of
6  Defendants' airfare.  See id.
7      According to this court's status (pretrial scheduling) order,
8  all discovery was to be completed by July 31, 2012.  Order, ECF No.
9  28.
10     On July 17, 2012, the parties requested to modify the
11 scheduling order to extend the discovery deadline because
12 "[d]espite all due diligence, the parties ha[d] been unable to
13 complete all of the necessary discovery, including expert
14 discovery."  Stip., ECF No. 30, at 2.
15     Finding that no good cause had been demonstrated for
16 modification of the scheduling order, the court denied the parties'
17 request.  See Minutes, ECF No. 32.  During the telephonic status
18 conference with the parties to discuss the modification request,
19 the court specifically advised the parties that, while they were
20 free to proceed with discovery according to their own arrangements,
21 the court would not enforce any agreements as to discovery that
22 were not made in accordance with the pretrial scheduling order.
23     Accordingly, the court will not impose sanctions on Plaintiff
24 for any costs incurred due to Plaintiff's cancellation of a
25 deposition scheduled for after the discovery deadline.  Defendants'
26 motion for discovery sanctions is DENIED.

## II. STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (it is the movant's burden "to demonstrate that there is 'no genuine issue as to any material fact' and that they are 'entitled to judgment as a matter of law'"); Walls v. Central Contra Costa Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (same).

Consequently, "[s]ummary judgment must be denied" if the court "determines that a 'genuine dispute as to [a] material fact' precludes immediate entry of judgment as a matter of law." Ortiz v. Jordan, 562 U.S. ___, 131 S. Ct. 884, 891, 178 L.Ed.2d 703 (2011), quoting Fed. R. Civ. P. 56(a); Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936 (9th Cir. 2011) (en banc) (same).

Under summary judgment practice, the moving party bears the initial responsibility of informing the district court of the basis for its motion, and "citing to particular parts of the materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact cannot be ... disputed."  Fed. R. Civ. P. 56(c)(1); Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) ("The moving party initially bears the burden of proving the absence of a genuine issue of material fact"), citing Celotex v. Catrett, 477

1 U.S. 317, 323 (1986).

2 However, "[w]here the non-moving party bears the burden of
3 proof at trial, the moving party need only prove that there is an
4 absence of evidence to support the non-moving party's case."
5 Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle
6 Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010).

7 If the moving party meets its initial responsibility, the
8 burden then shifts to the non-moving party to establish the
9 existence of a genuine issue of material fact. Matsushita Elec.
10 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S.Ct.
11 1348, 89 L.Ed.2d 538 (1986); Oracle Corp., 627 F.3d at 387 (where
12 the moving party meets its burden, "the burden then shifts to the
13 non-moving party to designate specific facts demonstrating the
14 existence of genuine issues for trial"). In doing so, the non-
15 moving party may not rely upon the denials of its pleadings, but
16 must tender evidence of specific facts in the form of affidavits
17 and/or other admissible materials in support of its contention that
18 the dispute exists. Fed. R. Civ. P. 56(c)(1)(A).

19 "In evaluating the evidence to determine whether there is a
20 genuine issue of fact," the court draws "all reasonable inferences
21 supported by the evidence in favor of the non-moving party."
22 Walls, 653 F.3d at 966. Because the court only considers
23 inferences "supported by the evidence," it is the non-moving
24 party's obligation to produce a factual predicate as a basis for
25 such inferences. See Richards v. Nielsen Freight Lines, 810 F.2d
26 898, 902 (9th Cir. 1987). The opposing party "must do more than

7

simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

### III. ANALYSIS

**A. Failure to Exercise Reasonable Care**

Defendants contend that, due to the undisputed evidence of Defendant Grewal's maintenance of his tractor, Plaintiff is unable to prove that Defendant Grewal failed to exercise reasonable care. As proof that Plaintiff is "unable to provide any factual explanation for her negligence claim," Defendants point to a number of interrogatory responses in which Plaintiff asserted that:

> The responding party is unable to admit or deny this request as this case is in the early stages of discovery. . . .
>
> [T]he lawsuit is based upon a preliminary traffic collision report indicating that a truck, owned and operated by defendants, lost the drive line and/or drive shaft to the truck, which collided with plaintiff's vehicle. Although it is believed and, therefore, alleged that drive lines and/or drive shafts that have been properly maintained do not separate from the vehicle without some type of negligence, it is still too early to answer this admission without a reasonable opportunity to perform discovery regarding the cause as to why the drive line and/or drive shaft separated from the truck.

Borger Decl., ECF No. 41, Ex. B, at 2-10.

The collision report at issue lists the "primary collision factor" or "cause" as "[o]ther than driver." Borger Decl., ECF No. 41, Ex. E, at 2, 6.

8

1    Defendants contend that plaintiff's claim is really a
2 disguised absolute liability claim.  The court cannot agree.
3    Plaintiff relies on res ipsa loquitur to prove negligence.
4 Under California law, "certain kinds of accidents are so likely to
5 have been caused by the defendant's negligence that one may fairly
6 say 'the thing speaks for itself,'" or, in Latin, "res ipsa
7 loquitur."  Brown v. Poway Unified School Dist., 4 Cal.4th 820,
8 825, 843 P.2d 624, 15 Cal.Rptr.2d 679 (Cal. 1993).
9    For this presumption to arise where the plaintiff presents
10 circumstantial evidence of negligence, three conditions must be
11 satisfied: (1) the accident must be of the kind that ordinarily
12 does not occur absent someone's negligence; (2) the cause or
13 instrumentality must have been within the defendant's exclusive
14 control; and (3) the accident must not have been due to the
15 plaintiff's voluntary action or contribution. Id.; see also Ybarra
16 v. Spangard, 25 Cal.2d 486, 489, 154 P.2d 687 (Cal. 1945). When
17 these conditions are met, the trier of fact may assume the
18 existence of the presumed fact unless the defendant introduces
19 evidence to the contrary.  Brown, 4 Cal.4th at 826.
20    The existence of the three conditions upon which res ipsa
21 loquitur is predicated is usually a question of fact. See Seneris
22 v. Haas, 45 Cal.2d 811, 826-27, 291 P.2d 915 (Cal. 1955). "[W]here
23 the evidence is conflicting or subject to different inferences, it
24 is for the jury, under proper instructions, to determine whether
25 each of the conditions necessary to bring into play the rule of res
26 ipsa loquitur is present." Roddiscraft v. Skelton Logging Co., 212

Cal.App.2d 784, 794, 28 Cal.Rptr. 277, 282-83 (Cal.Ct.App. 1963) (citations omitted), *overruled on other grounds by* McFarland v. Booker, 250 Cal.App.2d 402, 58 Cal.Rptr. 417, 422-23 (Cal.Ct.App. 1967).

In support of Plaintiff's argument that res ipsa loquitur applies to the facts presented in her case, Plaintiff refers to the declaration of Lawrence Huey ("Huey"). See Huey Decl., ECF No. 72. Huey attests that he is an "expert in vehicle maintenance and repair," that "[f]or 35 years, [he] was the owner and chief mechanic of [his] own shop, in which [he] personally maintained and repaired both commercial and non-commercial vehicles," and that he also "had experience working for Caltrans for approximately two years working on heavy equipment, including commercial-size trucks." Id. at 1.[5]

---

[5] Defendants object to Huey's testimony, arguing that Huey "is not qualified to provide to provide opinions on the maintenance of the truck or the reasons why the drive shaft or yoke may have detached from the truck." Defs' Reply, ECF No. 79, at 4.

Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. See also United States v. Finley, 301 F.3d 1000, 1007 (9th Cir. 2002) ("[Rule 702] consists of three distinct but related requirements: (1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion"); Sterner v. U.S. Drug Enforcement Agency, 467 F.Supp.2d 1017, 1033 (S.D.Cal. 2006) ("There are three basic requirements that must be met before expert testimony can be admitted. First,

Huey further attests that:

> (1) Semi-tractor drive shafts do not spontaneously come off without warning to the operator.
>
> (2) Warnings, such as vibrations, would be detectible to the operator. Once the operator could eliminate tire issues by visual inspection, they would know something more serious is wrong.
>
> (3) The potential of a critical failure resulting in the drive shaft coming off would almost always be preventable through adherence to reasonable preventative maintenance and inspection procedures.
>
> (4) There is almost always either a triggering event, such as an impact, which would put the operator on notice of potential problems, or else there would be easily-detectable symptoms of a driveline problem or notice of a serious mechanical problem.

---

the evidence must be useful to a finder of fact. Second, the expert witness must be qualified to provide this testimony. Third, the proposed evidence must be reliable or trustworthy" (citations omitted)).

"The party offering the expert bears the burden of establishing that Rule 702 is satisfied." United States v. Real Property in Santa Paula, Cal., 763 F.Supp.2d 1175, 1188, n.77 (C.D.Cal. 2011) (internal citations omitted). This showing must be by a preponderance of the evidence. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 594 n.10, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (citing Bourjaily v. United States, 483 U.S. 171, 175-76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). "In determining whether expert testimony is admissible under Rule 702, the district court must keep in mind Rule 702's broad parameters of reliability, relevancy, and assistance to the trier of fact." Sementilli v. Trinidad Corp., 155 F.3d 1130, 1134 (9th Cir. 1998) (internal quotation marks omitted); see also Jinro Am. Inc. v. Secure Invests., Inc., 266 F.3d 993, 1004 (9th Cir. 2001) ("Rule 702 is applied consistent with the 'liberal thrust' of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony" (internal quotation marks omitted)).

The court is satisfied that, given Huey's considerable experience as a mechanic for commercial vehicles, and specifically commercial-sized trucks, Huey's declaration meets the requirements of Rule 702. The court therefore considers Huey's declaration in deciding the instant motion.

...
<$>

(5) Such symptoms would include noticeable vibrations and/or noise.

(6) A reasonable commercial operator would immediately get his vehicle off the road to be inspected by an appropriate mechanic if such a triggering event occurred or symptoms were detected.

(7) Reasonable, appropriate periodic maintenance to the driveline, yokes, and fastening parts would prevent critical failures.

(8) Maintenance of commercial vehicles, such as semi-tractors is dependent on highly detailed inspections, open and thorough communication between the operator and his mechanics and maintenance professionals, and relatively strict adherence to schedules and standard practices.

(9) Because commercial vehicles are typically driven many times as many miles per year as non-commercial vehicles, delaying maintenance of critical parts or systems for even a short period of time will have a multiplied impact on potentially dangerous equipment problems and safety on the road.

(10) Additionally, because of the size of the vehicles and danger to other drivers on the highway, safety concerns with respect to maintenance and repair must be even more focused.

(11) By comparison, a problem that a private car owner might reasonably wait a day or two to address cannot reasonably be neglected by a commercial operator for any length of time.

(12) In my review of the documentation provided by the defendant, there is no indication from the invoices of September 2008 or October 2008 that a full, systemic inspection, (such as indicated by the record of August 5, 2008,) of the driveline occurred.

(13) In particular, my review of the documentation provided by defendant reveals no inspection of the interaxle or its components or servicing of the interaxle or components.

(14) Between the August 5, 2008, inspection and the

12

>October 24, 2008, accident, there were 80 days of no documented inspection or service on the interaxle or components.
>
>. . . .
>
>(17) The interaxle, u-joints, and slip yokes are replaced on an as-needed basis, and are not changed out as a part of scheduled maintenance.

Id. at 1-3.

The court finds that Plaintiff has met her burden of establishing the existence of genuine issues for trial as related to whether Defendant Grewal failed to exercise reasonable care. Huey's attestations provide evidence that a dispute exists as to whether the accident was of the kind that ordinarily does not occur absent someone's negligence. That is, if Huey's attestations are credited, the first condition for establishing the presumption of res ipsa loquitur is met. Neither party disputes the satisfaction of the second condition for res ipsa loquitur (that "the cause or instrumentality must have been within the defendant's exclusive control"). Drawing all reasonable inferences supported by the evidence in favor of the Plaintiff, the court determines that the third condition for res ipsa loquitur (that "the accident must not have been due to the plaintiff's voluntary action or contribution") may be met by the traffic collision report, which indicates that the "primary collision factor" or "cause" of the accident was "[o]ther than driver."

Thus, Plaintiff has provided specific evidence demonstrating that the res ipsa loquitur presumption should apply to this case when proving whether Defendant Grewal acted with reasonable care.

13

1  The court therefore denies Defendants' motion for summary judgment
2  as to the issue of whether Defendant Grewal acted with reasonable
3  care.

**B. Negligent Entrustment**

Defendants argue that Plaintiff lacks evidence to establish that Defendant New Star Transportation Inc. ("New Star") negligently entrusted the vehicle to Defendant Grewal.

The tort of negligent entrustment of a motor vehicle is premised on a vehicle owner or permitter's wrongful entrustment of a motor vehicle, with permission to operate the same, to one whose incompetency, inexperience, or recklessness is known or should have been known to the owner. Osborn v. Hertz Corp., 205 Cal.App.3d 703, 708-09, 252 Cal.Rptr. 613 (Cal.Ct.App. 1989).

In support of Defendants' motion for summary judgment on Plaintiff's negligent entrustment claim, Defendants note Plaintiff's interrogatory responses as to New Star's liability, in which Plaintiff indicated that her case is based on the traffic collision report. See Defs' Mem., ECF No. 39, at 3-4; Borger Decl., ECF No. 41, Ex. B, at 5-10. Defendants further assert that Defendant Grewal was not an employee of New Star, but was, instead, an independent contractor. Pl's Resp., ECF No. 77, at 6, ¶¶ 20, 21.

In response, Plaintiff provide to the following deposition testimony of Defendant Grewal, taken on March 16, 2012:

> Q. Who do you currently work for right now?
> A. Right now I work at same company.  New Star.
> . . . .

14

```
         Q.  Okay.  At the time of the accident we're here
         for, October of 2008, did you work for New Star?
         A.  Yes.
         . . . .
         Q.  Okay.  Do you work for New Star full time?
         A.  Yes, full time.  I am an owner operator; that
         truck was mine.
         Q.  But you work for New Star?
         A.  Yes, I working for New Star.
         . . . .
         Q.  Thank you.  You are an employee of New Star?
         A.  Yes.
```

Masuda Decl., ECF No. 73, at 20-21. Plaintiff further argues that Defendant Grewal's "lack of maintenance, temporary lack of a valid license, and lack of records of maintenance are all evidence that defendant New Star knew or should have known that defendant Singh should not have been entrusted with loads in interstate/international commerce." Pl's Mot., ECF No. 76, at 7.

Plaintiff has provided specific evidence in the form of Defendant Grewal's deposition testimony as to the question of whether Defendant Grewal was an employee of New Star or an independent contractor. The extent to which New Star can be said to have, in fact, entrusted Grewal with driving the truck may be resolved by the type of employment relationship between the two defendants. The court therefore finds that, in regards to Plaintiff's claim for negligent entrustment, there is a genuine dispute of material fact as to Grewal's relationship to New Star.

Furthermore, the undisputed fact that Grewal, as a professional truck driver, had temporarily lacked a valid license could be probative to a jury as to whether New Star was negligent in entrusting Grewal with the burdens and responsibilities of his

15

employ.

Because Plaintiff has sufficiently demonstrated the existence of genuine issues for trial as to her negligent entrustment claim against Defendant New Star, the court denies Defendants' motion for summary judgment in this regard as well.

### IV. CONCLUSION

Accordingly, the court ORDERS as follows:

- Defendants' motion for sanctions, ECF No. 68, is DENIED.
- Defendants' motion for summary judgment, ECF No. 38, is DENIED in its entirety.

IT IS SO ORDERED.

DATED: September 20, 2012.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT